Ms. Pratt. May it please the Court. Good morning, Your Honors. Fran Pratt and Valencia Roberts on behalf of the appellant, Philip Sebolt. Your Honors, Philip Sebolt was charged and convicted of making a notice seeking to receive child pornography during a six-week period in early 2010. In convicting him of this charge, the District Court relied on two sets of documents that it erroneously admitted under Rule 404B. The Court gave five reasons for convicting Mr. Sebolt, three of which relate directly to the 404B evidence. And they are, and I'm referring or quoting from pages 261 through 62 of the Joint Appendix. First, that the pamphlet or flyer is very similar in writing to other items which are pretty clearly linked to Mr. Sebolt. Second, that the content of the flyer is similar to his other works. And third, that a book belonging to Mr. Sebolt found in his cell contained, quote, a secret compartment in it just like the greeting cards. Given these findings, it is clear, I think, that the omission of this 404B evidence harmed Mr. Sebolt and led to his conviction. I plan to focus this morning on why this Rule 404B evidence was improperly admitted. And if time allows, I'll also try to address Mr. Sebolt's sentence. And you are contending that with regard to all five of the letters, not to any specific ones? We argue that all five pieces of evidence were erroneously admitted under 404B, yes. You do not acknowledge that at least three of them seem to go to questions of identity pretty clearly? Arguably, they all go to identity, but we also argue that under 404B that there should be a higher degree of relevance under that portion of the 404B test before evidence used to show identity can come in. So you agree for identity as a basis for 404B? Yes. Of relevance? When he has said that it could, he's pointed to this other fellow who's an inmate, and say, oh no, that's, not say it directly, but maybe imply, it wasn't me, it was really him. And then so now you come in with a series of letters, and I probably see where you're going, at least in terms of the children's books, the letters on that. The other three, it seems to give some indication, okay, this isn't just your inmate here, this is you. There's no question, Judge Wynn, that the primary purpose of this evidence was to establish Mr. Siebel as the culprit. But I think what cases have shown is that when evidence comes in under Rule 404B to show identity, that it really needs to amount to essentially a signature or a modus operandi. And we contend that the pieces of evidence at issue here are just too different from the conduct that is charged. And the conduct that is charged, keeping in mind exactly what that is, is critical, I think, in this case. Because Rule 404B has to relate the evidence coming in under it to the crime charged. It can't just come in because of some general type of relevancy. It has to relate, to tie directly to the crime charged. Identity, criminal agency, is an issue in every criminal case. It is, Judge Davis. So if it's admitted to prove identity, it's admissible in any criminal case, provided all the other requirements are satisfied. Identity is always at issue, but it's a question of to what degree. I'm not sure I follow that. The question is to what degree. Well, Rule 404B evidence can come in to show any number of things. Most cases, there's not a question about identity. So identity is in there as kind of a preliminary thing, and the government would have to show that, in fact, it's the defendant who supposedly committed this other act, as a preliminary to getting it in. But here, because the primary purpose is to show identity, the other purposes, the balance is reversed. The other purposes really aren't at issue in the way that identity is here. I'm having some difficulty following the train of your argument. Okay. Well, this is different from, say, a typical drug case where the question is, did the person intend to distribute drugs? That's not identity. That's mens rea as to a specific intent. Actus reus. But my point is, Your Honor, that the government can't bring in evidence of that other act if they haven't actually shown that the defendant is that person involved with that other act. Oh, I see your point. Your argument is that it really is not identity, really evidence. I'm sorry, Your Honor? It's really not identity evidence. It's not to identify, but it's to connect him with similar type documents, isn't it? It is. And perhaps you think I'm using identity too loosely, but it's the same kind of thing if you have somebody who commits a bank robbery and they do it with a very specific way. They wear a particular kind of cap that's very distinguishable. And the person is saying that, well, I had that cap, but I wasn't wearing it. I'm not the one who committed that bank robbery. But then there's evidence come in of somebody else wearing that exact same cap in a time period close to the charged robbery. That, I think, would be an example of a signature kind of crime that would allow that other robbery to come in to show that the defendant committed this robbery. And I hope that's an example that makes sense. But even if there's not a higher standard, even if the court doesn't want to find that when evidence is used primarily for identity that the other evidence has to really establish some sort of a signature crime, even under kind of the standard 404B test for relevance, which depends on similarity in timing, here these other documents just are not similar enough and are too far removed in time to qualify under 404B. But maybe not similar in terms of being exactly the same, but we're talking in the instance with Bland, was it a flyer? It was a flyer. It's referred to as a flyer under the terms of the statute. It's a notice seeking to receive or buy child pornography. And so he says, you know, I had nothing to do with that. That was Bland. Basically, I don't do that sort of thing because I'm not the person to do that. And then he has these letters, and these letters all deal with nude children. I mean, you've got the same kind of thing going on here, and he's done it. It would seem, I mean, when you're dealing with relevance, I know you say it's hyphen in terms of identity. But identity, when we're talking about is it the same person, identity in terms of signature is whether what you are saying this is is what it is. You've got a handwriting expert who says, oh, he's not contesting that those are letters, right? I think at this point, no. So those are his letters. That part of the scheme is it. And then you've got this flyer, and he says, oh, no, that's not me, and they're saying it is. And so we're getting into it's not all the evidence, but at least it shows something, doesn't it? It may, but I think what this may boil down to is just how similar it has to be. And again, leaving aside an argument that specifically for identity, it should be an even higher standard, I think these still are just too different. And if you look at some of the drug cases recently in which this court has actually found Rule 404B evidence to be improperly admitted, those, again, I think could be said to be similar. And yet this court has said that that evidence should not have come in, that it can't be simply somebody trying to, you know, having some overall scheme to try to get, you know, whether it's child pornography or get drugs. It's got to be more similar than that, and especially the further away in time it goes. And that's why the McCrary documents, and in particular the two book requests, just are so clearly different from what is going on here. In those documents, he simply was asking for general information about two books. And they were, you know, about three and a half years before this charged conduct. I mean, those to me are very clearly not admissible under 404B, and yet the district court not only admitted them, but relied on them in saying that they are similar, you know, that this flyer is similar to his other works. Well, those book requests are part of his other works. Would the court like me to address the sentencing issue, or do you have other questions about the 404B? Well, you can argue any way you want. We'll interrupt you if we have questions. Okay. As to the 2008 greeting cards, the government has argued that those are intrinsic to the offense. And if they are intrinsic, then, of course, Rule 404B wouldn't even apply. We contend that they are extrinsic. To be intrinsic, the evidence would have to be either inextricably intertwined or the acts part of a single criminal episode or necessary preliminaries to the crime charged. And that takes me back to one of my earlier points. What is specifically charged here matters. The government did not charge him with the 2008 documents. The government did not charge him with any of the other documents found in the box that Mr. Bland was taking out of prison. The government charged him very specifically only with the creation of this particular flyer. And I think that's very significant, and it makes this case very different from other cases. For example, in this case, this court's recent Otuya decision from this summer. In that case, the indictment charged a conspiracy over about a year-and-a-half period. That opens up much more evidence to potentially being intrinsic. But here, you've got documents from 14 months earlier with absolutely nothing in between during those 14 months to show that there were any other documents. And the government has contended that the interception of those documents instigated the Bureau of Prisons' investigation into Mr. Sebald. Well, the Bureau of Prisons' officials testified that, you know, so far as one of them, Heather McWilliams, knew that that investigation never went anywhere. And certainly there's no evidence that the Bureau of Prisons intercepted anything else in those 14 months that Mr. Sebald was trying to either have come into him or go out. So I think given that other complete absence of evidence that those December 2008 documents are not intrinsic to this offense and must be considered under Rule 404B itself. Well, both parties agree that this is going to need to be remanded for sentencing. Is that right? Yes, the government agrees. We had raised two sentencing issues, one about criminal history and one about offense level calculation. The government has conceded on the criminal history calculation and agreed that this case should go back for resentencing. We would like the court to consider the legal argument that we made about the distribution enhancement, but if the court doesn't want to do so, we then would still ask that the district court be allowed to reconsider the factual argument about whether the images constitute child pornography because the district court gave no indication of what legal standard it was applying in concluding that some of these images constitute child pornography. And the two-level enhancement makes a big difference in its guideline range. That will impact on a final sentence, on the sentence ultimately selected. Basically you're saying you don't have to reach the sentencing, you just want us to say something to the district court that you can consider all issues back when you re-sentence? We would request a remand for a general re-sentencing, de novo re-sentencing, so that the district court could reconsider the distribution enhancement. All right. All right. Thank you, Ms. Baird. Mr. Johnstone. Thank you, Your Honor. May it please the court, my name is Tommy Johnstone. I'm here on behalf of the United States. And with respect to the 404B evidence that the defendant is challenging, the government has contended from the very beginning that all five pieces of evidence that were admitted are intrinsic to the charged offense. And in thinking about that, the record shows that... What does that mean, intrinsic to the charged offense? Well, I'm sorry, Your Honor? What does that mean? You've got a flyer on one hand, and then you've got three letters, then you've got two more letters to be able to read books. Yes, Your Honor. What's the intrinsic nature of that? In thinking about the intrinsic nature of the additional documents, the package that the defendant gave to Randall Bland consisted of an envelope box that was stuffed with envelopes. And within those envelopes were sealed the flyer, which was the basis of the charge, as well as numerous other form letters to book publishers requesting books, things of that nature, as well as an individual letter to Kesty, who was the sender of one of the letters in December of 2008. So in looking at what was in the package and comparing it to all of these other documents, it's clear that the defendant was engaged in a long-term plan to secrete nude photographs or photographs of children into BOP facilities. Is that required to have any photographs at all for the offense charge? I'm sorry, Your Honor? Are graphic depictions required for the offense charge? No, Your Honor. No, not at all. So you could very well just say in wonderful prose, I would like to have child pornography. Anybody who has any, please send it to me, period. Correct? That would be chargeable under the statute. I will point out the defendant went much farther than that. So why are graphic depictions intrinsic to the crime charge? Well, the five pieces of evidence that were introduced from FCM McCreary and from December of 2008 were not graphic depictions. They were letters in and of themselves. But why would they be intrinsic? They're intrinsic in the fact that they are all part of the defendant's plan to secrete nude photographs of children or photographs of children into BOP facilities. But he's not charged with planning, is he? No, he's charged with soliciting child pornography via this flyer. But I still think the flyer is just the latest installment in this plan. But even if the court finds that the pieces of evidence are not intrinsic, they're still admissible under 404B as the district court found. The district court did not accept your argument that they're intrinsic? Ultimately, the district court found that they were admissible under 404B, and the government would submit that in addition to identity, the pieces of evidence were admitted to show the defendant's intent and knowledge and that he did have this plan. Some of these pieces of evidence go to his plan and his preparation. And I think what's important to note with respect to similarity is that the defendant is actually asking this court to hold that the items admitted under 404B have to be essentially identical to the charged flyer in this case. In a review of the case law in this court... I don't think that's the argument. Well, in the brief, Your Honor, the defendant breaks it down almost into a granular fashion and says, you know, this letter was handwritten, this letter was photocopied, this letter was, you know... Okay, but perhaps, again, you can present your argument. I would be interested in hearing, I guess, why it's admissible. In other words, rather than focusing on the defendant's arguments as to why it's not admissible, it would be helpful to me if you told me why it was admissible. Sure. The evidence is admissible under 404B to show intent, knowledge, plan, preparation, and identity. He wasn't charged with a plan. He wasn't charged with a scheme. So I'm really hung up on why you keep mentioning plan. Well, I think that all of these... There's no planning charge. All of these issues, such as knowledge and intent and the plan, go to identify the defendant as the creator of this flyer. And as the court noted during the defendant's argument, the defendant's sole defense was, I didn't do this flyer, Randall Bland did this flyer. Right. By the way, how did Randall Bland testify on that point? Mr. Bland said that the defendant gave him this sealed box. He didn't know what was in there. He did not know what was in it. The envelopes were addressed, sealed, and the box was sealed up, and the defendant simply told him, hey, when you get out, drop them in the mail. Okay. So the defendant's defense is, I don't know anything about that box, didn't give it to him, I didn't do it. Correct. Okay. The defendant's sole defense was to imply that Randall Bland was the creator of the flyer. So the question is, who created the advertisement? Yes, sir. Which is a single document, right? Yes, front and back. Front and back. Front and back. Front had a pay scale, basically the request. The back had a collage of images and hand-drawn sketches. So who created that document? Yes, sir. That was the issue at trial. So the five pieces of evidence are admissible under 404B because they meet the four prongs articulated in Queen. They're relevant to the charged offense. They're necessary in the sense that they are probative as to an essential claim or charge of the offense. They are reliable, and they have no undue prejudice on the defendant. And so I think with respect to the similarity argument the defendant has raised and the level of similarity that is required, I think it's important to note that in the case law from this court, there are multiple ways in which acts can be similar. For instance, acts can be similar in that they use the same methods to accomplish a certain thing or that they use slightly different methods but the intent or the end result is similar. And I think that we have both in this case. We have similar methods in that the defendant was consistently using correspondence sent through the mail to request photographs of children or nude photographs of children. And he may have tweaked that slightly, but by and large that was his method of operation, was requests to pen pals through the mail for these types of images. We also have similarity in intent. And while the defendant says that the letters are not the same because some go to books and some go to people and some are for money and some are not, but the intent of his actions was the same in that it was to secrete the images into this prison. And I think the court's decision in Hornsby is illustrative of that. In Hornsby, the defendant was charged with instructing a support, a subordinate, to destroy some computer data to conceal some evidence. The prior bad act that the government wanted to introduce was the defendant instructing the employee to burn some documents. So whereas the methods were dissimilar, the intent of those methods was the same, the concealment of evidence. And I think in this case, while the five pieces of evidence admitted under 404B may not have been exactly the same or identical to the charged flyer, the intent of those pieces of evidence was the same. Also, as to necessity, this court has held in Rooks that evidence is necessary if it is simply probative of a claim that has been charged by the government. It doesn't have to be critical to the government's case to be admissible. It just needs to be probative as to an issue that must be proven at trial. In this case, it was probative as to identity. The defendant was saying, this is not me that did this. And so the government had to prove the creator of the flyer was the defendant. And so under that standard, the evidence was necessary. And what exactly was the nexus between the 404B documents and the advertisement? Are you speaking as to reliability, Your Honor? As to reliability. So the government has outlined about eight pieces or eight indicia of reliability as to each of these documents as a whole. I will say that the FCI McCreery, the two letters to the book publishers, they contain the defendant's name, the defendant's BOP registration. Mercedes Carroll, who was in charge of monitoring the defendant's mail at FCI McCreery, testified that she had reviewed two to three letters or correspondence from the defendant per week while he was at FCI McCreery, and she recognized that as his writing. The Candy Brown letter referenced a request to Candy Brown, whoever that may be, offering to pay Candy Brown for images of pornography. It included the defendant's name, his BOP registration, and as well, Ms. Carroll testified that she recognized the defendant's handwriting. And that's the connection to the flyer? Yes, Your Honor, in the sense that there's a nexus to the flyer with respect to the Candy Brown letter because the defendant is using his name to request nude images in exchange for payment. Her name on the flyer? Her name is not on the flyer, but his name is on the flyer. Phil is on the flyer. And Philip Seabolt, with his BOP registration number, is on the Candy Brown letter. With respect to the December of 2008 letters... He didn't need that to prove that. Just the flyer itself. He said that's his name, right? Well, but, Your Honor, within the context of the flyer, Randall Bland was also implicated in that. He should be. I mean, he had to be implicated. Not only did he have... Implicated? He had it. Not only did he have the flyer in his possession, but the return address that the defendant used on the flyer was Phil, care of, Russell Cain, which is Randall Bland's... Then, therefore, you're making my case. Why did you need the other stuff? Because it linked the defendant to these other attempts in which he had intended to secrete nude images. But we don't want to connect just bad conduct. That's what we're trying to avoid, right? Yes, Your Honor. And it wasn't admitted simply for the propensity to commit such a crime. It was admitted to show that he had the intent to do it before... Well, that's part of the game under 404B. It's never admitted for propensity. I'm sorry, Judge Gregory, I didn't mean to interrupt, but I guess this isn't particularly relevant. When was the jury trial waiver accepted by the district court? The defendant waived jury... I want to say weeks, probably months before... Early on. Early on before the bench trial. It was set for a bench trial early on. Okay, so this was never... Of course, he could always change his mind, and the judge could exercise discretion, but this was really never going to be a jury trial. Correct. And so I guess I'm a little puzzled. You didn't want to go to trial, that is the government, didn't want to go to trial only on the testimony of Mr. Bland. Is that how this all shakes out? Correct. I think if you look at the... Because you had inmate A saying inmate B did it, and inmate B saying inmate A did it. Right, and I think if you look at the non-404B evidence in this case, we had the flyer itself, which did implicate the defendant by name of Phil. Did you get fingerprints off of it, by the way? No, Your Honor. No, okay. Also, the back of the flyer that contained the collage and the hand-drawn sketches of the children's genitalia, the actual color images and the hand-drawn sketches were recovered from the defendant's cell, and Scott Bernardo from FCI Petersburg testified that they were in a book, in a hardback book with the defendant's name all over it, and they were in a hidden compartment that had been glued to the back of the book, and they were in this defendant's locker. Did you try to get fingerprint evidence? Not to my knowledge, Your Honor. Why not? Because the key would be whether or not the other fellow's fingerprints are on it, because it shouldn't be, because he said, I didn't know what was in it. Yes, Your Honor. I do not know the reason why fingerprints were not tried to be, were not, they didn't try to obtain fingerprints. Sounds like you need some training at FCI Petersburg. Maybe so, Your Honor. Maybe so. And I think, and then, of course, non-404B would be Randall Bland saying, I didn't have anything to do with this. Philip Seabolt gave this to me. And while that would have been sufficient for a conviction at trial, I don't think the government's required to take that risk. Nothing under the case law says that we are required to take the risk that the trier of fact, whoever that may be, would find that evidence to be sufficient when we have this other evidence, which is relevant and reliable, that goes to these other issues, such as intent and identity. And so that is why the government proceeded to introduce this evidence, and the court rightfully admitted it. And yet you don't argue harmless error here. Well, Your Honor, I would say that it would be harmless. But you don't argue that. I did not argue it in the brief. And you can't argue it here. Fair enough, Your Honor. Fair enough. But I would say that the district court did make a credibility finding of Randall Bland. But, of course, that was after the fact. And the government didn't know that before trial started, which is why we attempted to. Very unusual situation. It really is. By the way, and I meant to ask Ms. Pratt this question, but are you aware of any court, either this one or any other circuit court, that has reversed a conviction under 404B in a non-jury trial? No, Your Honor. I mean, that would be pretty remarkable. Right. And, in fact, Your Honor, this court, particularly in the civil context, has said that 403B is a useless procedure in the civil context. And I would point out that in the Hassan Zeta case in front of this court, which was a criminal trial, the court did not go so far as to say that 403B or 403, I'm sorry, is a useless procedure. But it did say and give strong endorsement that a district court could be able to separate any passions or inflammatory material from the findings of fact. And I would also point out, too, Your Honor, that this was a bench trial, obviously, but the 404B evidence that the government was introducing was, at worst, as severe as the crime charged. But most of the 404B evidence was less severe. It was less sensational than the crime that was charged, particularly the form letters from F.C.I. McCreery. And so this court has held in buyers and in Boyd that if the 404B evidence is not as severe or is less sensational than the crime charged, then there is no 403 problem, even in a jury context. But, of course, here we have a jury trial. If there are no other questions on 404B, I'll just address the sentencing issues briefly. With respect to the 404B 1.5 enhancement to criminal history category, in light of the Supreme Court's decision in Descamps, as well as this court's recent decisions in Montes Flores and in Hemingway, the government looked at the issue, and while we do have a divisible statute in this case, there are alternative means to violate this statute. We do not have any Shepard-approved source, such as a plea agreement, a statement of facts, or even the indictment in this case, to point to to say the defendant was convicted because of production of child pornography, not trafficking in or receipt of child pornography. And because of that, because the crime charge cuts more broadly than the definition of covered sex crime in the guidelines, the government would concede that the enhancement to the defendant's criminal history category was in error. And so we would ask that it be remanded for that to be adjusted. As for the distribution, the government contends and asserts that that enhancement was proper and that the district court was correct in applying that two-point enhancement. Why don't we just let the district court deal with it all when we send it back? You certainly could do that, Your Honor, but I would point out that when the defendant raised his objection to the two-point enhancement, the district court initially said, I'm going to overrule that objection for two reasons. And his first reason was because there were pornographic images on the back of the flyer. And then the second reason had to do with the distribution in the sense the defendant almost received an image of child pornography. And the government said, well, that's not it. The government conceded that the defendant's receipt of child pornography was not a basis for the enhancement, but the images on the back of the flyer are. Which images, though? Which images? Well, there are at least three images on the back of the flyer. And just to be clear, Your Honor, the government's not talking about the hand-drawn sketches. And the government made that clear at sentencing, that the hand-drawn sketches, while they are of children's genitalia, are not child pornography under the statute because they're not actual children. But there are three images within the collage itself which are not from reputable magazines. I think it's pretty clear if you look at them. Reputable magazine? Or National Geographic or anything like that, which is what the defendant argued. Oh, it has to be a reputable magazine. Well, Your Honor, that was probably misspeaking on my part. I think you spoke exactly how people think. If it's a book with Rembrandts or Renaissance, you know, it's okay. You've been through art galleries, have you not? Yes, sir. I'm sure you've seen new children, haven't you? Yes, sir. Government hasn't asked to have them pulled down, have they? No, sir. Why not? They're new. They're not actual children, Your Honor. Because they're not actual children. They're paintings or sculptures. But an actual child posed for them. Isn't that the same thing you use? The same thing there? If you're the subject of the art, you certainly wouldn't say that's not child pornography if someone had a child posed and they painted them, would you? Your Honor, I think under the legal definition of child pornography, it has to be an identifiable minor in the charged image or painting. So while you may be able to charge that person some hands-on... You might want to look at a case called Worley out of the full circuit. Yes, Your Honor. Not that I commend it to you, but you might want to look at that. Go ahead. But with respect to the three images in the collage, the district court itself referenced one in the lower right-hand corner. It had to do with a nude female who was straddling the leg of an adult male. The government referenced... That's pornographic? Yes, Your Honor. The government would say that's pornographic. Why? Well, her genitals were exposed, Your Honor. And to the camera. The government pointed to... Because she's nude. Yes, Your Honor. So nudity meets the standard? Nudity in itself does not meet the standard. But there needs to be... His leg meets the standard? What is it? To determine whether or not something is pornographic in that it's the lascivious exhibition of nudity, the courts often look to what's known as the DOS factors, which takes into account the context of the image, whether or not the genitals are the focus of the image, whether the child is nude or partially nude, whether the child is posed in a provocative manner or clothed in an attire that is inappropriate for their age, things of that nature. And so that image, I think, would qualify as that because the genitals are exposed. If I may have some time to respond to your question. Go ahead. The government referenced an image on the left side of the floor, which is a male infant's genitals, which is the sole focus. There is nothing else besides the male genitals. Since you're answering the question, we will end up with this unless my dear colleagues have additional questions. Your learned colleague on the other side says that the court didn't articulate exactly what standard was being used. Can you address that? That's why we ought to send it all back for sentencing. Yes, Your Honor. Well, the district court did make the finding or did make the statement that it was overruling the motion because there were pornographic images on the back of the flyer. That's rather conclusive. Or the front of the flyer. He didn't know. Conclusively. What about specific reference to the analysis? Well, in terms of specifically saying, I find that that is pornographic because of the genitals being exposed or another factor, the district court didn't make a specific finding as to that. But the district court did make that first statement and then did reference the photograph in the lower right-hand corner and the government referenced the image halfway down on the left of the male infant's genitalia. And so I think based on that and based on the fact that the defendant sealed these things up, put them in envelopes, addressed them and gave them to Bland to mail out, that would constitute any act related to that. People do that for all letters. I've sealed my letters, too. Yes, Your Honor, but that would be the act related to the transfer of material, which is required under the guidelines. So that's how the guideline would apply. If there are no further questions, I would just say. I have one last question. I want to go back just to this relevance part of 404B. Three of the letters, one in March of 2007 and two in December of 2008, involved solicitations for explicit material. But two of those documents, the July letters, were specific requests for books about children, and they didn't mention child nudity, just asked for books generally, whether they contained photos and illustrations. What is the relevance of those two letters? The relevance, Your Honor, would be the request for images or illustrations of children, and it also relates to… Children's books, just regular books. Well, I think with pictures, but nothing asking for anybody nude. They're just letters. But I think the request was for books that have pictures of children in them. And the reason why that also relates to the charging offense is based on what was found adjacent to the flyer in the envelope box, which were the form letters to book publishers requesting very similar books, pamphlets, newsletters, related to images or illustrations of children. Those letters that were recovered in February of 2010 in the envelope box, blank copies of those form letters were also found in the defendant's cell with the images and things that he possessed. So that would be the connection between the two book publisher letters from FCM McCreary. Okay, thank you. Thank you, Your Honor. All right, thank you. Ms. Pratt, you have some time left. I would like to try to address three points with respect to Rule 404B. First, necessity. Second, long-term plan. And then third, bench trial. As to necessity, Judge Gregory, I think you ask a very good question. This other evidence was not necessary. What was necessary, we contend, is a known exemplar of Mr. Seabolt's handwriting. The government never subpoenaed him for that. They never went, for example, through the Bureau of Prison Records to find something like a grievance that would be indisputably in his handwriting. This would be such an easy case if they had done that, and we wouldn't be here today. In terms of the long-term plan, the government has contended in the district court, in its briefing now, that Mr. Seabolt has this long-term plan to secrete photographs into prison and that this is just the latest installment. That's dangerously close to propensity. And the details make the difference here. These are different plans. In the McCrary documents, and particularly these two book requests, those are just too different from what is actually charged here. And those are very clearly, erroneously admitted under 404B. And it's also just as clear that the district court relied on them. And, Judge Davis, as you point out, the government's never tried to argue that there is harm in the admission of this evidence. Do we look at this in isolation? You know, if you didn't have some connection between Bland and the defendant, Bland is testifying, the defendant gave him his package, the judge makes these findings, among which they say, Bland apparently, from the perspective of the judge, was just really not, didn't seem to have the wherewithal to do this, was one of the determinations from a credibility perspective. That's neither here nor there. But in terms of what was actually used for the 404B evidence, what's in this package, connecting up the two when your client says, essentially says, that's Bland, that's not me, I'm not connected with it, from a necessity perspective, why is it not probative of a scheme if you've got these letters, series of letters, and you're soliciting information, you've got this package over here, it's all connected? Because the government didn't charge a scheme. The government, as I said earlier, the government could have charged this very differently. Well, I mean, for 404B purposes, do you have to charge a scheme if the purpose of it is simply to connect, or at least to show necessity for showing that it's the same thing, for identity purpose, that you did this conduct? Let me try to answer it this way, Your Honor. Going back to my point that all the government had to do was introduce a known handwriting sample. That would have made this connection to Mr. Siebel absolutely clear, and we wouldn't be here today. Handwriting sample of what? Of something. Of what? Of any sort of handwriting sample. I mean, whether it's an exemplar that they subpoenaed from him. Again, because of the connection between the handwriting that's on the envelope There was no handwriting expert in this case. There was a handwriting expert, and she was never shown a known example of Mr. Siebel's handwriting. All she could say was that of the exemplars she was provided, which included some of this 404B evidence, all she could say was that this was the same person who created it, but she could not say that it was Mr. Siebel who created it. What do you mean created it? You mean both of them? Wrote the documents that were the subject of her examination. What do you think took them so long to pull all of this together? I don't know, Your Honor. Problems with the Bureau of Prisons? Interacting with the U.S. Attorney's Office? I don't know. I find it very surprising that there is such a long lapse between the discovery of the 2008 documents, but I don't want to speculate. And did they choose this charge because of the life, the advertisement? It's just such an odd charge. I agree. I think this is a very unusual case. Are there any other cases under this statute out there? There may be a very few, but I don't know if there are any with facts quite like this. So it's a mandatory minimum 35 years? Yes, because he has priors. Because of the priors. Yes. I think it's otherwise 15, and the 35 years does come on top of his other 30-year sentence. But I would have thought as soon as they opened the box, they would have donned rubber gloves if they hadn't already and immediately submitted it to the Bureau for fingerprinting and DNA. I mean, you would think. Apparently it was just, I don't know what it was. If I could just quickly address the idea of the bench trial. Your Honors, I don't think you should hesitate to reverse this case simply because it was before a judge and not a jury. Can you answer the question I asked your colleague? Are you aware of any federal court of appeals? I cannot say that I've looked specifically for that, but let me explain why. 403 with the concerns about taming the jury or the fact finder, that is only the final prong of the 404B analysis. In order to even get to that, this evidence has to meet the other three prongs. Judge Gibney made legal errors in admitting him under those first three prongs. And secondly, the 403 test is a very different test from what this court has to look at in determining whether there is harm for purposes of appellate review. And there clearly was harm here. The district court relied on this evidence. Three out of its five reasons went to this evidence. That evidence impacted its judgment. The government has not contended otherwise, and we requested it. Doesn't it make a difference if it's a bench trial and a 403 evaluation and if it's a jury trial? I think it does, but that doesn't obviate the fact that under the first three prongs of 403, of 404B, that the evidence should not have come in. But here's your challenge. Assume hypothetically we find error that's not harmless. Given that this is a bench trial, could we not send it back to the district court for new findings on the existing record while excluding the 404B? Aren't you really stuck with that? I think if the court vacates the conviction, the conviction should be vacated. Well, we can vacate the conviction, instruct the district court to make new findings without regard to the 404B. Again, I'm just speaking hypothetically. Why wouldn't that be a perfectly permissible disposition consistent with due process? I mean, that's what you buy when you buy a bench trial. What you buy is a brand-new shiny car, but you can't be sure where it's going to take you. The answer, Your Honor, is he should get a new trial. But why wouldn't that be the equivalent of a new trial to ask a federal district judge who is presumed to know the law, to follow the law, to be able to parcel out admissible versus inadmissible? Federal district judges do that every day. That's what they do. And so why would there need to be a new presentation of evidence? Your Honor, I think we actually probably would be very happy... You don't challenge the sufficiency of the evidence. Not when the rule 404B came in. No, but you wouldn't challenge it. You would have had to have challenged it in this appeal if you really challenged the sufficiency of the evidence. And clearly, Bland's testimony is sufficient, if believed, to convict your client. So I don't mean to suggest that you didn't challenge the sufficiency of the evidence as criticism. It's not criticism. I think I'd be criticizing you if you had challenged the sufficiency of the evidence. I'd like to think that I showed some judgment in what I said. Exactly, and you did, and you did, absolutely. But I'm just wondering whether this isn't largely perhaps a pyrrhic victory if we were to be persuaded that the 404B shouldn't have come in. And I think we might be the first federal circuit court to find prejudicial error in a bench trial. And I strongly encourage this court to take that step, because that would be following the law that this court has laid out in its prior decisions. And so we do ask that his conviction be vacated and also that he get a new sentencing. Thank you. Thank you very much. You want to take a break? I don't need... Okay, we'll come down to Greek Council and proceed to our third case.
judges: Roger L. Gregory, Andre M. Davis, James A. Wynn, Jr.